## THE STATE v. MARSHALL.

### In Banc, February 9, 1897.

1. **Criminal Practice**: SEDUCTION UNDER PROMISE OF MARRIAGE: EVIDENCE. The prosecutrix on a trial for seduction under promise of marriage can testify as to her own age, though a question of pedigree is not directly in issue.

2. ———: ———: INSTRUCTION. An instruction that the element of seduction may be established by the uncorroborated testimony of the prosecutrix is proper.

3. ———: ———: BURDEN OF PROOF. The burden is on the state to prove beyond a reasonable doubt the fact of seduction.

4. ———: ———. The promise of marriage may be corroborated by circumstances alone.   (*State v. Hill*, 91 Mo. 426.)

5. ———: ———. Seduction consists in corrupting and drawing aside a woman of good repute from the path of virtue under promise of marriage.

6. ———: ———. The prosecutrix was "debauched" when defendant had intercourse with her in connection with the promise of marriage.

*Appeal from Chariton Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*L. N. Dempsey* and *Crawley & Son* for appellant.

(1) The evidence in this record does not establish with certainty the age of the prosecutrix, nor does it disclose any fact or circumstance from which her age may be fairly and conclusively deduced. (2) The crime charged was not established. Either the parties "yielded to each other" through the giddy impulse of mutual folly, or else, as frankly stated by the prosecutrix on redirect examination, the transaction between them was merely a bargain, whereby marriage at Christmas was the agreed price to be paid by the boy, in the future, for a commodity to be presently delivered. In either view the prosecution fails. "To say that such a one was seduced by simply a blunt offer of wedlock *in futuro*, in exchange for sexual favors *in praesenti,* is an announcement that smacks too much of barter, and not enough of betrayal. This is hire, or salary, not seduction." *State v. Reeves,* 97 Mo. *loc. cit.* 677. (3) The fourth instruction given on behalf of the state is vicious and misleading to the last degree. By the first clause of that instruction the jury are told "that they may find the *fact* of seduction upon the unsupported testimony of the prosecutrix, Annie Mason," without so much as requiring them to believe her testimony to be true. In effect they are told: "The seduction of Annie Mason is a fact; which fact, you may find to have been sufficiently established by her unsupported testimony, notwithstanding that testimony is flatly contradicted by the testimony of the defendant." (4) The latter part of said fourth instruction given on behalf of the state is equally faulty and misleading. To tell the jury that "the testimony of the prosecutrix, Annie Mason, as to the defendant's promise of marriage must be supported by strong and clear proof of facts and circumstances sufficient to establish such contract or

promise of marriage, and entitled to more weight with the jury than the testimony offered by defendant,'' without attempting to tell them what was necessary to constitute such "strong and clear proof," or what was "sufficient to establish such contract or promise," was equivalent to telling them just nothing at all; leaving them to decide for themselves both the law and the facts. *State v. Reeves*, 97 Mo. 668. This court having already approved an instruction broad enough to cover this phase of the present case, it ought to have been followed. *State v. Wheeler*, 108 Mo. 665. (5) The state's sixth instruction does not correctly define the word seduce; neither is the word debauch correctly defined in the seventh instruction. (6) The verdict being clearly due to prejudice or passion on the part of the jury, the judgment for that reason should be reversed. *State v. Primm*, 98 Mo. 373.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The trial judge saw them, noted their conduct, learned their interest, their prejudice, and their feeling, and was of the opinion that the state's testimony had established the guilt of the defendant sufficiently to authorize him in permitting that question to be submitted to the jury, in order that they might say under the instructions given them, whether the defendant was guilty or innocent. *State v. Fischer*, 124 Mo. 462; *State v. Punshon*, 124 Mo. 448; *State v. Young*, 119 Mo. 495; *State v. Banks*, 118 Mo. 117. (2) The instructions given upon the part of the state are most exceedingly liberal to the defendant. Indeed, it would be very difficult to draft eight instructions more generous to him. (3) Defendant's instructions, as given, were exceedingly liberal, and left no possibility of defend-

ant's conviction as long as the legal presumption of his innocence and reasonable doubt of his guilt could withstand the overwhelming testimony introduced by the state. The fifth correctly defined the term "good repute." *State v. Brandenburg*, 23 S. W. Rep. 1080; *State v. Wheeler*, 108 Mo. 665; *State v. Patterson*, 88 Mo. 88. (4) The sixth tells the jury what facts were necessary to establish the seduction of the prosecutrix. *State v. Wheeler, supra.* (5) The seventh correctly defined "debauch." *State v. Wheeler*, 108 Mo. 662. (6) The eighth sums up the things necessary to defendant's conviction, and informs the jury as to the punishment to be assessed in event of conviction. Sec. 3486, R. S. 1889. (7) Counsel for appellant criticise the first portion of the instruction, which tells the jury that they may find the fact of seduction upon the unsupported testimony of the prosecutrix. This is in harmony with the authorities. *State v. Hill*, 91 Mo. 429; *State v. McCaskey*, 104 Mo. 647.

MACFARLANE, J.—Defendant appeals from the judgment of the circuit court of Chariton county convicting him of the crime of seducing Annie Mason, under promise of marriage.

The prosecutrix testified to the promise of marriage and seduction. Her father testified that defendant told him of the engagement and asked his consent to her marriage. A number of her neighbors testified to her previous good reputation.

Prosecutrix testified that, at the time of the seduction, she was under eighteen years of age; that she was sixteen years old on the first day of September, 1892. The alleged seduction was in August, 1893. On cross-examination she said she knew her age from what had been told her by her aunt; that when quite small she was taken to Kansas, where she lived with her aunt

until she was nine years old.   Her aunt told her when she left there that she was nine years old.   She was unable to state how many years she had lived in Missouri since her return.   She was unable to state whether the seduction occurred in 1891 or 1892.

John Mason, the father of the prosecutrix, testified that at the time of the trial she was between eighteen and nineteen years of age; that prosecutrix was two years old when her mother died.   This witness could not give the dates of the birth of the girl, or of his own birth or marriage, nor could he give the period that had elapsed between any two events.

The fourth, fifth, sixth, and seventh instructions given at request of the state are as follows:

"4.   The jury are instructed that they may find the fact of seduction upon the unsupported testimony of the prosecutrix Annie Mason, but as to the promise of marriage, her testimony must be strongly corroborated by other testimony, sufficient to overcome the oath of the defendant, and the legal presumption of his innocence; that is, the testimony of the prosecutrix Annie Mason, as to the defendant's promise of marriage must be supported by strong and clear proof of facts and circumstances sufficient to establish said contract or promise of marriage, and entitled to more weight with the jury than the testimony offered by the defendant.

"5.   The term 'good repute' as used in these instructions and applied to this case, means that Annie Mason, the prosecutrix, at the time of the alleged offense must have been a woman of good reputation for virtue and chastity and that she was honestly pursuing the path of virtue.

"6.   To find that the prosecutrix, Annie Mason, was 'seduced' by defendant, you must find that she was a woman of good repute and that she was cor-

rupted, deceived, and drawn aside from the path of virtue, which she was pursuing, and that her affections were gained and her thoughts polluted by the defendant in connection with a promise of marriage.

"7.   The word 'debauch' as used in these instructions and applied to this case, means that defendant had carnal intercourse with the said prosecutrix Annie Mason, in connection with a promise of marriage."

I.   At the close of the evidence the court was requested by defendant's counsel to instruct the jury to return a verdict of acquittal.   This the court refused to do, and its action is assigned as error.   In support of this assignment counsel insist that there was no competent and credible evidence that the prosecutrix was, at the time of the seduction, under the age of eighteen years, and the request for that reason should have been granted.

It must be admitted that the witnesses who testified to the age of the prosecutrix showed a lamentable want of capacity for carrying dates in the memory, as well as a want of mental ability to calculate the periods between two dates.   But these mental deficiencies do not conclusively establish an incapacity to add, every twelve months, one year to the age.   The age can be correctly kept in the memory when the year of the birth is forgotten, and the various periods of life can not be calculated.

While the father, as a witness, may have shown a great want of intelligence, and, on cross-examination, may have become so confused as "not to know anything," as he acknowledged, still he testified positively, on his direct examination, to his daughter's age.   It would be going too far to say, as a matter of law, that his evidence was entitled to no weight at all.   It was for the jury, who saw and heard him, to say whether his credibility was destroyed by the cross-examination,

or whether his want of intelligence wholly discredited him. *Reg. v. Nicholls*, 10 Cox C. C. 476.

Prosecutrix was also competent to testify to her own age, subject to cross-examination. *State v. Cougot*, 121 Mo. *loc. cit.* 463, and cases cited.

The supreme judicial court of Massachusetts declares the law on this subject as follows:

"This case does not present the question whether a person can be permitted to testify to the precise day of his birth. It is quite clear that one may testify, from his own knowledge of himself, whether he was twenty-one or sixteen years of age at a certain time, * * * and that such weight may be given to his testimony as the court or the jury trying the case may think it entitled to receive." *Hill v. Eldridge*, 126 Mass. 234. To the same effect see, also, *Cherry v. State*, 68 Ala. 30; *Cheever v. Congdon*, 34 Mich. 297; *Comstock v. State*, 14 Neb. 207; *State v. Cain*, 9 W.Va. 559; *Railroad v. Coggin*, 73 Ga. 689.

According to the testimony of the girl she was under seventeen years of age when seduced. The knowledge she had of herself, without other sources of information, would entitle her evidence to go to the jury for what it was worth.

The fact that she had received information from her aunt as to her age does not destroy, as evidence, her testimony based upon personal knowledge of herself. It may have weakened its probative value, in the estimation of the jury, or it may not. That was a question for the jury itself to settle.

But we do not believe that one testifies from hearsay, strictly speaking, when he states his own age, though his information may have been derived from his parents, or other relatives, with whom he lived in his infancy. His age is a fact, of which he may be said to have knowledge based upon family tradition. *Cherry*

State v. Marshall.

*v. State, supra; Commonwealth v. Stevenson*, 142 Mass. 466.

These cases were both prosecutions for unlawfully selling intoxicating liquors to a minor. In each case the minor was permitted by the trial court to testify to his own age, and in the former of them he also testified that he knew his age from what his mother had told him. The supreme court of Alabama, after acknowledging the rule in pedigree cases, namely, that declarations are generally "deemed to be relevant only in cases in which the pedigree to which they relate is in issue, and not to cases in which it is only relevant to the issue" (Steph. Dig. Ev., chap. 4, art. 31), says:

"These principles do not preclude a person from testifying to his own age, which is a matter of pedigree, and which he is presumed to know in the same sense that he knows of a custom or prescription. The testimony of the witness Daniel Allen was properly admitted. The statement as to his own age was primary and not secondary evidence. This was not vitiated by the reason given, that his mother told him so."

In the Massachusetts case (*loc. cit.* 468) the evidence was also held competent by the supreme judicial court, "based," says Judge HOLMES, "as it must be, on family tradition, and fortified by his knowledge of himself."

These cases were cited approvingly in a recent case by the supreme court of California. *People v. Ratz,* 46 Pac. Rep. 915.

On a prosecution for rape the prosecutrix was permitted to testify to her own parentage. On exception the supreme court of Nebraska says: "It is certainly competent for one who, from his earliest recollection, has been a member of one's family, given his name, and reared in the belief, and in all ways given to under-

stand that he is a son in the household, to testify of his parentage." *Comstock v. State, supra.*

Our opinion is that the court did not commit error in permitting the prosecutrix to testify as to her own age, though a question of pedigree was not directly in issue.

II. The evidence that the seduction was accomplished through a promise of marriage was sufficient to sustain the verdict. The substance of the evidence of the prosecutrix was that she yielded to defendant's persuasions because she loved him and he promised to marry her. Counsel for defendant, on cross-examination of the witness, undertook to secure her admission of a bargain, such as would have defeated the prosecution under the rule declared in the *Reeves* case, 97 Mo. *loc. cit.* 677, but in that he failed.

III. The instructions given the jury at the request of defendant declared the law most favorably to him on all questions involved in his defense. No complaint is made to them. No instruction asked was refused except the one in which the sufficiency of the evidence was challenged.

Counsel object to the fourth instruction given in behalf of the state. They say that the first clause of that instruction is vicious and misleading because, on the issue of seduction, it leaves entirely out of view the evidence of defendant, and in effect tells the jury that they may find that charge to have been established from the evidence of the prosecutrix alone, though they may believe it to be wholly incredible and contradicted by other evidence.

The law was correctly declared by this instruction; that is to say, that the element of seduction, in the crime charged, may be established by the uncorroborated evidence of the prosecutrix. From the nature of the offense this rule is a necessity.

But it would certainly be an improper comment on the evidence for the court directly, or in effect, to tell the jury that the evidence of the prosecuting witness, on the question of seduction, is to be taken as true.

But we do not regard the instruction as open to the criticism made upon it. Singling out this evidence, and declaring its effect, if believed, is not a comment upon the evidence, because the law makes it sufficient to establish the fact of seduction. It would be improper for the court to tell the jury what weight should be given to it, but we do not think the instruction does this. It merely informs the jury that they may find this fact upon the uncorroborated evidence of the prosecutrix; but her evidence of the promise of marriage must be corroborated. The instruction was intended simply to point out the evidence made necessary by the law to establish the two facts, the seduction and the promise of marriage. The jury could not have misunderstood it, particularly in view of a most favorable instruction on this issue given at request of defendant.

By this instruction the jury are told: "Unless it has been proven in the present case to your satisfaction, beyond a reasonable doubt, that Annie Mason consented to have carnal intercourse with defendant, by reason of defendant's acts and persuasions, and not through an inclination on her part to do wrong" * * * "there is no seduction in the case, and you are bound to find the defendant not guilty." The burden is thus properly placed upon the state to prove, beyond a reasonable doubt, the fact of the seduction. The jury could only have understood, from the instruction complained of, that the evidence of the prosecutrix must be sufficient to establish the fact beyond a reasonable doubt.

An instruction was given in the *Reeves* case *(supra)*, the first part of which was in the exact language of this one. While the court in the opinion delivered criticizes that part of the instruction requiring corroborating evidence of the promise of marriage, no objection is suggested to the part here complained of. We assume that no objection was found to it.

We do not regard this part of the instruction as misleading.

IV. If there was error in the part of the instruction in respect to the necessity of evidence corroborating that of the accusing witness, as to the promise of marriage, it was in favor of defendant. The jury is told that her evidence must be supported by strong and clear proof of facts *and* circumstances sufficient to establish beyond a reasonable doubt the promise of marriage, and entitled to more weight with the jury than the testimony offered by the defendant. Evidence of circumstances alone will satisfy the requirements of the statute as to corroborating evidence. *State v. Hill*, 91 Mo. 426.

This instruction required in corroboration the proof of both facts and circumstances. It also requires the corroborating evidence alone to be sufficient to overcome the oath of defendant and the legal presumption of his innocence. If the corroborating evidence must be sufficient alone to establish the promise of marriage the evidence of the prosecuting witness amounts to nothing. Defendant certainly can not complain of it.

Instruction 6 explaining what is necessary to constitute seduction, and 7, defining the word debauch, are unobjectionable.

On the trial numerous objections were made to the ruling of the court in the admission and rejection of evidence. Counsel call our attention to no particular

ruling as being erroneous. We have examined them all with care and find none which is in the least prejudicial to defendant.

Defendant had a fair trial and the judgment is affirmed. GANTT, BURGESS, ROBINSON, and BRACE, JJ., concur; BARCLAY, C. J., concurs in the result; SHERWOOD, J., dissents.

SHERWOOD, J. (*dissenting*). — Indicted for, and convicted of, the seduction of Annie Mason under a promise of marriage, and his term of imprisonment in the penitentiary affixed at two years, defendant appeals to this court.

It will be unnecessary to notice the evidence in detail; such portions of it as occasion may require will be briefly outlined.

The testimony of the girl tends to show that defendant, who at the time had not attained his majority, had become engaged to her some time before the night of the sexual encounter, and that she yielded to him because he renewed his promise to marry her; that he would do so the next ensuing Christmas, and because she loved him and wanted him, and that influenced by all these things she "yielded to him."

This result of the testimony of the prosecutrix was only obtained, however, after many questions, strictly leading in their character, had been asked her, by the prosecuting attorney, who seemed incapable of asking any questions but of the sort mentioned.

But before the result aforesaid was reached, on her redirect examination, the prosecutrix admitted, in answer to the prosecuting attorney, that defendant made a bargain with her that if she would yield to him, he would marry her the next Christmas. This admission was, however, after much interrogation on the part of the prosecution, so changed by the prosecutrix in her

subsequent testimony as to materially qualify her former admissions, which, had they remained unaltered, would have defeated the prosecution under the rule laid down in *Reeves* case, 97 Mo. *loc. cit.* 677, that the acceptance of a mere offer of marriage without more, in exchange for sexual favors would not amount to seduction.

Testifying on his own behalf, defendant told a far different story; he denied that he at any time had plighted his troth to Annie, and though admitting that on the eventful evening he had sexual intercourse with her, yet he testified that there was no seduction about it; that he and Annie merely "met congenial, mingling flame with flame."

Under our statute the crime of seduction under promise of marriage can only be committed where the female is unmarried and under the age of eighteen years. The testimony of the prosecutrix on the point of her age was extremely unsatisfactory.

The trial which resulted in the present appeal, occurred at the April term, 1895. A former trial it seems had occurred in 1893. *State v. Marshall*, 121 Mo. 476.

The prosecutrix testified that she knew nothing about her age; only knew as she had been told; that she was born in Missouri, but removed to Kansas when quite small and lived with her aunt. Whether her aunt was allied to her by blood or marriage, or what her means and sources of information were as to her niece's age, she does not state, but she says that on the eve of her return to Missouri, to Chariton county, her aunt told her she was nine years old; but how many years she had remained in Missouri before she became sixteen years of age she could not tell. Nor could she tell whether she was fifteen or sixteen years of age when she was seduced, nor whether it was in 1891 or in 1892 that the seduction occurred.

It is true she states that she was eighteen years old on the first day of the September next preceding the trial, but how she arrived at this result she could not explain.

The testimony of the father of the prosecutrix who would, it seems, have known the age of his daughter, was shown on cross-examination to be absolutely unreliable. He was unable to give the day, month, or year of his own birth nor the year of the birth of any of his children, nor by whom he was married to his present wife, nor the date of that marriage. He spoke of his daughter's age at a certain time, but being closely cross-examined, he finally broke down and in his conscious helplessness exclaimed: "I don't know anything." His wife, however, testified that the prosecutrix told her on her arrival from Kansas that she was nine years old, and that witness had been married two years at that time, and that she would have been married eleven years the twenty-seventh of next month (May), and that according to this calculation, Annie was eighteen years old the preceding September. Such, in substance, is the evidence on the point of Annie's age.

There is no question but that a witness may testify to his own age, but such witness is, of course, subject to cross-examination in order to ascertain the sources of his information. *State v. Cougot*, 121 Mo. *loc. cit.* 463, and authorities cited.

In the case at bar, as already noted, the cross-examination shows that the prosecutrix knew nothing as to her age of her own knowledge; that her information respecting her age at the time of her departure from Kansas for Missouri, had been derived from her aunt then living in the former state.

These facts then present the question whether such testimony thus derived was admissible or possessed any

probative force in a prosecution for seduction.   The authorities are to the effect that such evidence, which would otherwise be hearsay, is confined to the proof of *pedigree*, and does not include the admission of hearsay to establish birth, death, or marriage, when introduced for other purposes than *pedigree*.   1 Whart. Ev. [3 Ed.], sec. 209.

"We think it entirely clear that from the nature of the case, as well as upon authority, a case of pedigree forms an exception to the general rule as to proof of a particular fact by hearsay, reputation, or tradition. As to what is a case of pedigree, an examination of the question shows that a case is not necessarily one of that kind, because it may involve questions of birth, parentage, age, or relationship.   Where these questions are merely incidental and the judgment will simply establish a debt, or a person's liability on a contract, *   *   *   the case is not one of pedigree, although questions of marriage, legitimacy, death, or birth are incidentally inquired of."   1 Rice, Ev., p. 418.

Stephens, when speaking of declarations as to pedigree, says:  "Such declarations are deemed to be relevant only in cases in which the pedigree to which they relate is in issue, and not to cases in which it is only relevant to the issue."   Steph. Dig. Law Evid., chap. 4, art. 31.

In short, such declarations only become evidence when the fact sought to be established by hearsay is required to be proved for some *genealogical* purpose, and not otherwise.   2 Taylor, Evid. [9 Ed.], sec. 645.

Thus in *Haines v. Guthrie*, L. R. 13 Q. B. Div. 818, it was held both in the Queen's Bench division and in the court of appeal that the declarations of a deceased father were not admissible in evidence to prove the age of his son who had been sued for the price of horses sold him, he having set up the defense

of infancy, and this because the case was not one of *pedigree;* it was not at all a purely *genealogical contro-versy,* but a mere collateral issue, and hence the rule applicable alone in pedigree cases did not apply.

In *Eisenlord v. Clum,* 126 N. Y. 552, the subject is elaborately discussed and the authorities ably reviewed per PECKHAM, J., and the same doctrine announced as in the former case.

In *Com. v. Felch,* 132 Mass. 22, where, in conse-quence of an operation to produce an abortion the woman died, and it was attempted by her declarations respecting the paternity of the child to cast the onus of such paternity on a person other than the defendant, and show that such person had a motive to procure such abortion, and thus to apply to the case the rule relating to pedigree, the lower court rejected the evi-dence of such declarations, as not admissible for any purpose, and this ruling was affirmed on appeal, LORD, J., remarking: "It is not enough that the declarations tendered may relate to some question of pedigree, nor is it enough that a question of pedigree may be relevant and pertinent to the issue. The exception to the inad-missibility of hearsay evidence because it relates to pedigree is only when the question of pedigree is itself in issue." See, also, 1 Glf. Evid. [15 Ed.], sec. 103; *Union v. Plainfield,* 39 Conn. 563; *Wise v. Wynn,* 59 Miss. 588; *Westfield v. Warren,* 3 Halst. 249; *Shields v. Boucher,* 1 De Gex & Sm. 40; *Berkeley Peerage* case, 4 Camp. 401; *Copes v. Pearce,* 7 Gill, 247.

In *Mima Queen v. Hepburn,* 7 Cr. 290, which was a suit for freedom by plaintiffs, it was ruled that evidence such as would be admissible in a pedigree case, was inadmissible in that one. So, also, in *Davis v. Wood,* 1 Wheat. 6, the same doctrine was again asserted.

In settlement cases it was formerly the practice to admit the declarations of deceased persons as to par-

ticulars concerning their settlements, though not relating to matters of pedigree. But that such evidence is inadmissible is now well settled. 1 Phil. Evid. [Cow. H. & E.'s notes], *257; *King v. Nuneham Courtney*, 1 East, 373; *King v. Chadderton*, 2 East, 29; *King v. Ferry Frystone*, *Id.* 54; *King v. Abergwilly*, *Id.* 63.

In *King v. Eriswell*, 3 T. R., the court was evenly divided on the question, but the views of cogent reasons of GROSE, J., and Lord KENYON in that case ultimately prevailed in the subsequent cases just cited, and were approvingly cited and followed by the supreme court of the United States in *Mima Queen's* case, *supra*.

An occasional case may be found where the point that hearsay evidence is held admissible in other than pedigree cases to establish a specific fact, but it is believed that in all such cases the distinction between matters of pedigree where the direct issue is a *genealogical* one, and other cases where no such direct issue is presented, has either been wholly overlooked and not referred to or else the utterance has been entirely *obiter*.

This is notably true of *North Brookfield v. Warren*, 16 Gray, 174, a settlement case, where there was positive testimony to show that though the marriage of the father of the alleged pauper occurred in February, 1804, yet that the pauper was born in the fall of *1803*, and that, consequently, he was not entitled to a settlement in the parish where born. The witness, a stranger, who testified on the part of the *defendants* to the fact of the date of the birth of the pauper, was allowed to have her testimony corroborated as to that date of the birth of the pauper by the fact that witness with her aunt, Mrs. Blair, in 1803, made a visit to a relative near the house where Ruth Richardson, the mother of the pauper and the infant pauper were, and that the aunt had with her at the time of such visit,

her infant child, an only daughter Susanna, who, born in 1802, and at the time of the visit about a year old, died on December 12, 1803. And further to corroborate the witness and to show that her memory was accurate and as a means of showing that she kept in remembrance the date of Susanna's death, it was held admissible to show further that witness had, since that time, kept her memory refreshed as to the date of Susanna's death by frequent reference to a large parchment kept in her aunt's family, bearing the inscription "family record," on which was inscribed the usual recitals of marriages, births and deaths in her *aunt's family*, and on such "family record" was entered, among others, when said Susanna was born, and that she had died on the twelfth of December, 1803. And other independent evidence to show the fact of keeping such record in witnesses' aunt's family, was held admissible, as well as to show that in the burial ground of the Blair family there was an ancient gravestone which bore the name of Susanna, and also the date December 12, 1803.

But certainly none of these facts mentioned had any bearing on the question whether evidence admissible in cases of pedigree, was admissible or non admissible in other cases than those concerning pedigree. So that the utterance in that case that there was no difference in principle between pedigree cases and others in this regard, was wholly *obiter*.

Besides the authorities cited in support of the assertion there made are all of them *pedigree* cases. Nor can the principal case be reconciled with the later one of *Com. v. Felch, supra*. And it is not a little curious to note that LORD, J., who was overruled in *North Brookfield v. Warren*, afterward delivered the opinion in *Felch's* case, *supra*.

In *Primm v. Stewart*, 7 Tex. 178, it was correctly

ruled that where a person is absent for seven years without being heard from, he is presumed to be dead, and this no one questions. 1 Glf. Evid. [14 Ed.], sec. 41. But this point afforded no basis for the observation that evidence admissible in pedigree is equally admissible in other cases. The observation is merely *obiter*, nor do the authorities cited support it.

It is unnecessary to cite other instances. In none of them where the question is discussed and the authorities examined, the rule that hearsay testimony is strictly confined to pedigree cases is always maintained, as appears from the above cited authorities.

But a pedigree case is not necessarily confined to *civil* actions, it may exist in a criminal case where relationship is to be shown; for instance in a case of incest. *State v. Bullinger*, 54 Mo. 142; *Ewell v. State*, 6 Yerg. 364.

Inasmuch as in the present case there was no question of pedigree involved, the testimony of the prosecutrix was wholly inadmissible and possessed no probative force as to the alleged declarations made to her as to her age by her aunt on the departure of the former for Missouri.

Here the prosecution could only be maintained by establishing beyond reasonable doubt that the prosecutrix was under the age of eighteen years at the time of her alleged seduction. The proof of this matter was vitally essential to the maintenance of the prosecution, and could not be established by mere hearsay such as the testimony of the girl on the point of her age was.

This being the case, the instruction asked by defendant in the nature of a demurrer to the evidence should have been given, and because of its refusal, the judgment should be reversed and the cause remanded.

The foregoing opinion, rejected *in banc*, I now file as the grounds of my dissent herein.