## THE STATE v. OLLIE LONG, Appellant.

### Division Two, December 19, 1911.

1. **SEDUCTION: "Seduce."** The word "seduce" when used alone in a statute of the kind under consideration in this case (Sec. 4478, R. S. 1909) usually implies the offense of inducing an unmarried woman, under or by promise of marriage, to surrender her chastity.

2. **"DEBAUCH."** The word "debauch" ordinarily imports the deflowering of a woman, whether with or without her consent, and, if with her consent, whether that consent be obtained by promise or persuasion or spring from her own desires.

3. **SEDUCTION: Statute: Title.** The title to the Act of 1897 (Laws 1897, p. 106) is restrictive in effect and can embrace no other offense than that of seduction, with which offense alone the section amended by this Act of 1897 had to do.

4. ————: **Sec. 4478, R. S. 1909: Seduce "and" Debauch.** The word "or" between the word "seduce" and the word "debauch" in the Act of 1897, p. 106 (Sec. 4478, R. S. 1909), should be read "and."

5. ————: ————: ————: **Instructions.** In this prosecution for seduction under promise of marriage under Sec. 4478, R. S. 1909, the court instructed the jury in effect that they should convict if they believed prosecutrix was either seduced *or* debauched by defendant under promise of marriage. *Held* that such instruction is erroneous because it defines two offenses when the statute creates but one.

6. ————: ————: **Evidence: Promise of Marriage: Corroboration of Prosecutrix.** In this prosecution for seduction under promise of marriage, the testimony of prosecutrix's father, that defendant admitted to him that he had promised to marry her, is corroborative of prosecutrix's testimony as to the promise.

7. ————: ————: ————: ————: ————: **By Circumstances.** In this prosecution for seduction under promise of marriage it is *held* that, aside from the testimony of prosecutrix's father, the circumstances in evidence are not sufficient to meet the requirements of the statute (Sec. 5235, R. S. 1909) as to the corroboration of the prosecutrix as to the promise, and the instruction given on this phase of the case should not have been so worded as to indicate to the jury that, without more, they might afford a basis for a finding that prosecutrix was sufficiently corroborated.

8. **APPEAL: Evidence: Sufficiency.** The evidence in this prosecution for seduction under promise of marriage is *held* sufficient to take the case to the jury and to support a finding of guilt.

Appeal from Atchison Circuit Court.—*Hon. William C. Ellison,* Judge.

REVERSED AND REMANDED.

*John W. Stokes* and *Hunt, Bailey & Hunt* for appellant.

(1) The court erred in refusing to give defendant's instruction 6a. The testimony of the prosecutrix, Carrie Miles, stands absolutely uncorroborated

as to the promise of marriage. Under our statute, as to the promise of marriage she must be corroborated to the same extent required of the principal witness in perjury. R. S. 1909, sec. 5235; State v. Reeves, 97 Mo. 673; State v. Hill, 91 Mo. 425; State v. Fogg, 206 Mo. 714; State v. Brassfield, 81 Mo. 159; State v. McCaskey, 104 Mo. 646; State v. Primm, 98 Mo. 373. Not one act that usually attends the marriage engagement was testified to by either the prosecutrix, Carrie Miles, her father, John Miles, or her mother, Mrs. John Miles. State v. Wheeler, 108 Mo. 655; Armstrong v. People, 70 N. Y. 38; State v. Hill, 91 Mo. 425; State v. Reeves, 97 Mo. 673; State v. Davis, 141 Mo. 525; State v. Mitchell, 229 Mo. 698; State v. Meals, 184 Mo. 254; State v. Falkner, 175 Mo. 581. (2) The court erred in modifying instruction 2, offered by defendant. The modification consisting in changing the copulative conjunction "and" to the disjunctive conjunction "or," in the clause "seduce and debauch," and making it read "seduce or debauch." Imboden v. St. Louis Union Trust Co., 111 Mo. App. 239; State v. Darling, 202 Mo. 165. Had the court given the instruction as asked by defendant it would have properly submitted the case to the jury on the defendant's theory. And it would have been in harmony with the adjudged instructions in cases of this class. The instruction as asked by the defendant should have been given. State v. Meals, 184 Mo. 250; State v. Fogg, 206 Mo. 714; State v. Mitchell, 229 Mo. 696. (3) The court erred in giving instruction 2, on the part of the State, in reference to the corroboration of the testimony of the prosecutrix, as to the promise of marriage. If that instruction does not negative the proper one given on behalf of the defendant on the same issue, it certainly did have the tendency to becloud the issue and confuse the jury. In the instruction given on behalf of the State the court practically told the jury that "Inde-

pendent evidence was that furnished by the defendant's admissions; defendant's conduct and demeanor toward her; defendant's relation and correspondence with her; defendant's attention to her." Thus virtually shutting out all independent evidence as to the corroboration. And then tells the jury that upon this independent evidence, together with that of Carrie Miles, it is sufficient to overcome the oath of defendant and the legal presumption of his innocence, and that they should find the defendant guilty. This instruction is not the law, and under it any man, be he ever so innocent, could be convicted. It singles out certain specific acts of the defendant and tells the jury these slight, specific acts are sufficient to corroborate the testimony of Carrie Miles, and it virtually tells the jury that the postcards given in evidence were sufficient corroboration. These specific acts should not have been singled out and given to the jury, and for so doing the court committed reversible error. State v. Ballard, 174 Mo. 615; Saxton v. Railroad, 98 Mo. App. 499; Eckhard v. Transit Co., 190 Mo. 620; State v. Hibler, 149 Mo. 486; Gordon v. Burris, 153 Mo. 235; State v. Fogg, 206 Mo. 714. (4) The conviction should not be allowed to stand. The judgment should be reversed and the defendant discharged. State v. Primm, 98 Mo. 372; State v. Dilts, 191 Mo. 675; State v. Francis, 199 Mo. 688; State v. McNamara, 100 Mo. 117; State v. Prendible, 165 Mo. 353; State v. Huff, 161 Mo. 487; Chitty v. Railroad, 148 Mo. 78; State v. Shackleford, 148 Mo. 495.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The conjunctive "and" (Laws 1897, p. 106) may have been changed to the disjunctive "or" improvidently, or inadvertently "crept in by mistake." If this court should so find, it will be the duty of the

court to construe the word "or" to mean "and," and in so doing this court will be following precedents. State v. Moody, 202 Mo. 127; Keeney v. McVoy, 206 Mo. 66; Perry v. Strawbridge, 209 Mo. 641. The presumption is that the Legislature never intended to enact an absurd law incapable of being intelligently enforced. State v. Fawcett, 212 Mo. 736, and cases there cited. (2) Appellant says that instruction 2 is not a correct instruction upon corroboration. In this connection it is well to consider section 5235, Revised Statutes 1909, which is as follows: "In trials for seduction under promise of marriage, the evidence of the woman as to such admissions must be corroborated to the same extent required of the principal witness in perjury." State v. Davis, 141 Mo. 525; State v. Wheeler, 108 Mo. 665; 1 Greenleaf on Evidence (14 Ed.), sec. 256, and cases there cited. For a solution of this proposition, it is only necessary to ascertain the construction this court has placed upon this section. A reference to the following cases will do so. State v. Hill, 91 Mo. 423; State v. Eisenhour, 132 Mo. 140; State v. McCaskey, 104 Mo. 644; State v. Sublett, 191 Mo. 163; State v. Fogg, 206 Mo. 696; State v. Walker, 232 Mo. 252. (3) The ninth point of appellant's brief is answered by the verdict of the jury. The jury settled the conflict in the evidence, and this court will not interfere. State v. Tetrick, 199 Mo. 100; State v. Mathews, 202 Mo. 148; State v. Smith, 109 Mo. 706; State v. Williams, 186 Mo. 128.

BLAIR, C.—Defendant was convicted in the Atchison county circuit court under an information charging him with seducing and debauching Carrie Miles under promise of marriage. After unsuccessful motions for new trial and in arrest of judgment, he appealed.

The evidence for the State tended to show that defendant and prosecutrix had been somewhat ac-

quainted for several years and that about two years before the occurrences which gave rise to this prosecution defendant had visited prosecutrix each Sunday for about three months; that these attentions came to an end in October, 1907, when defendant proposed marriage, but was not accepted. On Sunday, August 15, 1909, prosecutrix invited defendant and several young people of the neighborhood to her home, and defendant sought to accompany her to church that evening but failed because prosecutrix had an engagement to attend with another. Defendant was permitted to call the following Sunday however, and accompany prosecutrix to church. On their return defendant proposed marriage, was accepted, and in a very short time (before reaching her home) induced prosecutrix to have intercourse with him. On August 29 defendant again accompanied prosecutrix to church and their illicit intercourse was repeated. Defendant's visits then ceased. Prosecutrix's mother discovered on September 13th that she was pregnant, and on September 16th, defendant was accosted by prosecutrix's father and, according to the latter's testimony, admitted the promise of marriage and agreed to carry it out. There was evidence that prosecutrix was of good repute, unmarried, and under twenty-one years of age at the time of her downfall.

Defendant denied the promise of marriage, the intercourse and the admission testified to by prosecutrix's father. There was much testimony that the reputation of the latter for truth and veracity was bad, and also to the effect that he and prosecutrix at first charged defendant with having accomplished his purpose by force.

There was also evidence tending to show that prosecutrix's testimony on the trial differed in material respects from that given by her at the preliminary hearing, that she was accepting attentions from other young men in the early part of September, 1909,

and also that she took the initiative in the matter of the arrangement whereby defendant accompanied her to church August 22, 1909. There was also evidence that defendant's reputation for morality and virtue was good.

Several errors are assigned. In view of the fact that the cause must be remanded for reasons presently to be given, many contentions pressed in the briefs need not be discussed, some of them being unsound, and some being based on rulings not likely to recur on another trial.

I. In 1897 (Laws 1897, p. 106) the section of the Revised Statutes of 1889 (3486) defining seduction under promise of marriage was amended. Prior to that amendment the section provided that any person who should "under or by promise of marriage seduce *and* debauch any unmarried female of good repute," etc., should be punished as therein prescribed.

The Act of 1897 was entitled "An act to amend section 3486, chapter 47, article 2, of the Revised Statutes of Missouri of 1889, relating to seduction of unmarried females under eighteen years of age," and contained a prefatory section setting forth certain amendments intended to be made and ending with the words: "so that said section, when amended shall read as follows." The amended section, as then set out in full, contains all the amendments mentioned in the prefatory section, and, *in addition,* contains the word *"or"* instead of the word *"and"* between the words "seduce" and "debauch," so that the section as thus set out read, and now reads: "If any person shall, under or by promise of marriage, seduce *or* debauch any unmarried female of good repute," etc. The trial court instructed on the theory that either seduction *or* debauchment warranted a conviction.

Counsel contend that the section as set out in the amendatory act cannot be construed to create two

separate offenses in the stead of the one which the section previously defined, because (1) the title was not broad enough to warrant such a change and (2) the final section is repugnant to the prefatory section which declares the amendments intended to be made but gives no hint of a design to change the word "and" to "or."

Under section 34, article 4 of the Constitution, "it is quite common for the Legislature to first state that certain words of a specific section are stricken out and others inserted, and then set out in full the section as amended, but the Constitution makes no such requirement" (Cox v. Railroad, 174 Mo. l. c. 601, and cases cited), and ordinarily in case of repugnancy between the prefatory section, which the Constitution does not require at all, and that setting forth the section as amended, which the Constitution expressly requires to be included in every amendatory act of the kind, the greater importance of the last mentioned section and its later position in the act itself, by familiar canons of construction, entitle its provisions to prevail over those of the section of less importance and prior position. [Lewis's Sutherland, Statutory Construction, sec. 236.]

In this case, however, if this rule is to be applied and the change from "and" to "or" upheld, it must be done on the theory that the amendment was not designed to create a new and distinct crime since the title to the act is restrictive in effect and can embrace no other offense than that of seduction, with which offense, alone, the section amended had to do.

The word "seduce," when used alone in a statute of this kind, usually implies the offense of inducing an unmarried woman, under or by promise of marriage, to surrender her chastity. [Carlisle v. State, 73 Miss. l. c. 393.] The word "debauch" ordinarily imports the deflowering of a woman, whether with or without her consent, and, if with her consent, whether

that consent be obtained by promises and persuasion or spring from her own desires.

That the Legislature did not intend to disjoin the words "debauch" and "seduce" in the section and then use the former in its ordinary and unrestricted sense (supra) is clear from the fact that to so construe the word would convict that body of an intent to reduce the punishment for rape on the condition that it be committed upon the person to whom the ravisher was engaged to be married.

Could it be said to be our duty, however, to give the word "debauch" a meaning if possible which will bring it within the scope of the title of the act, it would follow that the words "seduce" and "debauch" must be construed, as employed in the Act of 1897, as synonyms, each meaning exactly what the two taken together meant in the section prior to its amendment.

There is a very strong suggestion of absurdity in the conclusion that the Legislature would thus deliberately set about effecting a change which amounted to no change at all, particularly since that change is not indicated to be intended by the section purporting to set forth the changes contemplated. It is further open to the argument that the Legislature is presumed to have known that this court had put a different construction (State v. Reeves, 97 Mo. l. c. 675) upon the word "seduce" and the word "debauch" as formerly used in this very section, and consequently that the new use of the words would ordinarily be presumed to be in the old sense. It is true that a new and different meaning, if the words are reasonably susceptible of it, might be ascribed to them to bring them within the title to the act, and it may be that the Legislature, aware of this rule, relied upon it in making the change. On the other hand, this would involve the assumption that that body incorporated in the amended section an amendment which it was aware could have no practical effect at all, except, perhaps, to confuse the law

upon this subject by substituting an involved for a plain provision. What possible reason can be assigned for an amendment which thus construed accomplishes nothing except to set a cunningly devised trap for trial courts?

In order to avoid this absurdity and yet carry out the legislative intent, as evidenced by the Act of 1897 as a whole, we are of the opinion that the substitution of the word *"or"* for *"and"* in the amended section was an inadvertence and that in the section as it now stands the word "or" between the words "seduce" and "debauch" should be read "and." For this conclusion there is abundant authority. [State v. Brandt, 41 Ia. 1. c. 615; State v. Myers, 10 Iowa 1. c. 449; Rolland v. Commonwealth, 82 Pa. St. 326; State v. Custer, 65 N. C. 1. c. 342; State v. Pool, 74 N. C. 1. c. 404; Endlich, Interpt. Stats., sec. 303; Bishop on Written Laws, 243; Lewis's Sutherland, Statutory Const., sec. 397.]

It is to be observed, also, that whether the word "or" be allowed to stand and the words "seduce" and "debauch" be interpreted in harmony with the title of the act, or the word "or" be rejected and the word "and" substituted for it, the practical result is the same and, in either event, there is but one crime defined and its elements are exactly what they were before, so far as this particular change is concerned. The requirements as to indictments, informations, instructions, evidence, etc., are unaffected by the change of "and" to "or" in 1897.

The court having instructed the jury, in effect, that they should convict if they believed prosecutrix was either seduced *or* debauched by defendant, under promise of marriage, this judgment must be reversed and the cause remanded for a new trial. The use of the disjunctive clearly imports the existence of evidence of two distinct crimes for either of which the instruction authorized the jury to convict.

Particularly was this instruction erroneous since the court therein defined "seduce" so that it did not necessarily include the element of carnal knowledge and defined "debauch" so that that element was all it did include. The instruction, therefore, taking into consideration these definitions, authorized a conviction for two separate acts, neither of which was necessarily within the statute. The error, in this respect, resulted solely from the use of the disjunctive instead of the conjunctive, which use the letter of the statute would authorize, but which, as shown above, is not warranted by its spirit.

II. The only evidence in this record corroborating the prosecutrix as to the promise of marriage is the testimony of John Miles, father of the prosecutrix, to the effect that defendant admitted to him that he had promised to marry his daughter.

No circumstances indicative of an engagement were proved. It is true there is evidence that about two years prior to the time prosecutrix testifies her downfall was accomplished, defendant called on her several times and prosecutrix testifies that these attentions culminated in October, 1907, in a proposal of marriage which she did not accept, and no further attentions seem to have been paid her by defendant until August, 1909. In the interim she attended church with other young men and corresponded with them. Defendant renewed his suit, according to prosecutrix, on August 22, 1909, and on the evening of that day the proposal of marriage was made and accepted and the betrayal almost immediately followed. This is prosecutrix's version of the matter. Her mother had no knowledge of any engagement of marriage until about September 13, 1909, when certain explanations demanded by her of prosecutrix elicited the accusation against defendant.

Defendant was seen in public with prosecutrix in 1909 as her escort but twice, once on August 22, and again either on August 29 or September 5.

Four or five postcards were offered by the State but were of such a character that they are of little value for any purpose, and all were dated prior to August 22, 1909, when the promise of marriage is said to have been made.

These circumstances are not sufficient to meet the requirements of the statute (Sec. 5235, R. S. 1909) as to the corroboration of the prosecutrix as to the promise of marriage (State v: Hill, 91 Mo. l. c. 426; State v. Eisenhour, 132 Mo. l. c. 147; State v. Davis, 141 Mo. l. c. 525), and the instruction on this phase of the case should not have been so worded as to indicate to the jury that, without more, they might afford a basis for a finding that prosecutrix was sufficiently corroborated as to that promise.

The testimony of John Miles as to defendant's admission of the promise of marriage was corroborative of the prosecutrix's testimony in the required particular. His credibility was for the jury.

III.   The sufficiency of the evidence is assailed and it is insisted that the judgment should be reversed and the defendant discharged.

The testimony of the prosecutrix is direct and that of her father as to defendant's admissions, if true, is sufficient to meet the requirements of the statute as to corroboration. Evidence as to the other elements of the offense is in the record. The credibility of the witnesses is for the jury. The question is not whether this court believes the evidence of these witnesses, but whether their testimony, if believed by the jury, is sufficient to support a finding of guilt. Applying the rule, we think there is enough evidence to take the case to the jury.

Accordingly, the judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.