# THE STATE v. BEN BRUTON, Appellant.

### Division Two, December 9, 1913.

1. **SEDUCTION: Corroboration of Prosecutrix.** By statute the testimony of the prosecutrix in a prosecution for seduction must be corroborated as to the promise of marriage; and while the evidence of corroboration need not be such as, standing by itself, would justify a conviction in a case in which the testimony of a single witness would suffice for that purpose, yet there must be some evidence of corroboration.

2. ———: ———: **Letter.** Where prosecutrix testified that defendant promised to marry her in May, but could not give the date, a letter written to her by him in July in which he said, "Say, sweetheart, do you want mary if you let me no," is not evidence of corroboration of a previous promise; and though she testified that, in reply to it, she promised to marry him, yet too many promises create suspicion, and the more promises and acceptances the less definiteness and certainty of guilt. And that letter being the only evidence corroborating her, a conviction cannot stand.

3. **EVIDENCE: Copy of Family Bible Record.** A copy of the family Bible record, made many years before the date prosecutrix charges she was seduced by defendant, by copying from the record in a worn Bible, whose lids were loose, upon a separate piece of paper, by members of the family, is competent evidence to corroborate parol testimony as to prosecutrix's age.

4. ———: **Seduction: Keeping Company with Other Girls.** In a seduction case it is proper for the trial court to restrict defendant's testimony relating to his keeping company with other girls in the community during the months covered by his engagement to prosecutrix, to the dates she testifies he was in her company.

Appeal from Greene Criminal Court.—*Hon. Alfred Page*, Judge.

REVERSED AND REMANDED.

*J. J. Gideon, J. C. West* and *W. G. Gideon* for appellant.

(1) The evidence, considered as a whole, does not constitute sufficient corroboration of any promise

of marriage by the defendant and accepted by the prosecutrix, and is not sufficient to overcome the legal presumption of innocence and the testimony offered by the defendant. State v. Long, 238 Mo. 383; State v. Teeter, 239 Mo. 475. (2) By the prosecutrix's own statement, the promise was to marry her if he got her into trouble, then there was no seduction. State v. Thomas, 231 Mo. 41. (3) The court refused the offer of the defendant to show by the defendant that during the year 1909, he kept the company of Susie Camp continuously, and that she died in the spring of 1910. And to show further that he kept company with William Alford's daughter, from March, 1910, until the present time, not missing but one Sunday during the whole time, which ruling of the court the defendant, by his counsel, then and there excepted at the time. The defendant was entitled to show the above facts to rebut and contradict the testimony of the prosecutrix.

*John T. Barker*, Attorney-General, and *Thomas J. Higgs*, Assistant Attorney-General, for the State.

(1) The statute requires that in a trial for seduction under promise of marriage, the evidence as to such promise must be corroborated to the same extent as required by the principal witness in perjury. Sec. 5235, R. S. 1909; State v. Sublett, 191 Mo. 163; State v. Fogg, 206 Mo. 296. (2) Error is alleged and exception saved as to the admission in evidence of a family record of dates of births of members of the family, record having been taken from a family Bible which was becoming so dilapidated that it was scarcely legible. A copy of an entry in a family Bible purporting to show the date of a person's death is admissible if the absence of the original is accounted for. Greenleaf v. Railroad, 30 Iowa, 301. Record of births, kept on a paper and written by neighbors, has been held by this court to be admissible to show the birth and

age of the persons whose records are so written, even though part of such record was written by a neighbor. State v. Neasby, 188 Mo. 470. In addition to this testimony, the prosecutrix testified to her own age, was sufficient proof when uncontradicted. State v. Marshall, 137 Mo. 468. The evidence of the age of the prosecutrix being uncontradicted, there was nothing prejudicial to the defendant, and the introduction in evidence of the paper showing the birth of the prosecutrix was not objectionable nor reversible error. (3) There was evidence that the prosecuting witness and the defendant had been acquainted for some time; that a promise of marriage had been made to the prosecutrix. That promise of marriage was corroborated by the letters that had been written by the defendant to the prosecutrix, one of which mentioned the fact of marrying, and the fact that they were often seen together; that the act of sexual intercourse did take place. Certainly this is sufficient evidence to sustain the verdict of the jury.

FARIS, J.—Defendant was tried in the criminal court of Greene county on July 23, 1912, upon an information charging him with seduction under promise of marriage, for that it was averred, he had seduced and debauched one Susan Reynolds, an unmarried female of good repute, under the age of 21 years. He was found guilty by the jury, which assessed his punishment at a fine of three hundred dollars and imprisonment in the county jail for a term of 180 days. From this verdict and the judgment following same he has appealed to this court.

The testimony in the case tends to show that defendant and prosecutrix had known one another nearly all of their lives; that they had lived for years near one another in Webster county, where they were both reared, though prosecutrix had been, prior to the seduction charged, living for a number of years

with her parents in Greene county. Apparently defendant himself was farming in Greene county at the time of the seduction, but since the offense was committed in Greene county neither of these facts is of much moment.

The testimony is somewhat voluminous and in many respects contradictory. That of the prosecutrix tends to show that defendant began keeping company with her in the month of February, 1909, and continued to wait on her with much of assiduity until sometime in April, 1911. She avers that in the month of May, 1910 (precise date or part of month not given), while walking home from church with defendant the latter asked her to marry him and that she consented. It seems from prosecutrix's testimony that her father was opposed to her receiving the attentions of defendant and would not permit him to visit her at her home. The details of this opposition, or the reasons for it, are not given, and the facts appear but obscurely and vaguely in the record. The prosecutrix states that the promise of defendant to marry her was conditioned upon her leaving home, which she did on June 22, 1910, and went to Kansas City, Kansas, where she remained about a month, living with her half brother. While at Kansas City, Kansas, defendant wrote prosecutrix a letter, which she received sometime in the early days of July, and which letter we print in full in the opinion herein, as it indubitably is the only spark of corroboration in the entire record. Upon the return of prosecutrix to her home, the attentions to her of defendant, she says, were renewed, and on August 3, 1910, while ostensibly on the way to attend church, at Rogersville, the defendant, protesting the while, to use her own words, "that he loved her better than any girl he ever kept company with," accomplished her undoing. The intercourse thus begun continued until sometime in March of the following year when she became pregnant, subsequently giv-

ing birth to a child on December 4, 1911. About the month of April, 1911, when she became aware of her condition, she confessed it to her sister-in-law, but so far as the record shows, her confession was confined to her condition of pregnancy, and gave no hint of the making, or of a reliance upon, the alleged promise of marriage, which she now avers caused her fall. Prosecutrix, for a part of the time covered by the record, seems to have been employed at various places in the neighborhood as a domestic servant, and for some three weeks in the month of October, 1910, performed such service for one Henry Bruton, the brother of defendant, at whose home at the same time defendant seems to have been staying.

Many witnesses were called for the State, who testified as to the good repute in the community of the prosecutrix prior to her downfall. Six of these witnesses for the State, for the most part her neighbors and acquaintances, out of nine who testified as to the below fact, say that they never saw defendant in company with her; the other three say that they never saw defendant with her but once or twice.

Defendant, on his part, proved for himself a good reputation generally, and for truth and veracity, and touching the precise failing involved in this inquiry. Testifying for himself, he denied the promise of marriage. Touching whether he had had sexual intercourse with prosecutrix, he refrained from committing himself, passing this question like the Levite "on the other side." He denied having paid court to prosecutrix and averred that he had not accompanied her or "gone with her in his whole life" but upon two occasions; once, to a dance in the vicinity, and on the other occasion he had driven with her in a buggy from the house of a neighbor where she was marooned by a rainstorm to the place at which she was then staying, and that upon the latter trip another

girl was in their company. In all of this his own wit-
nesses corroborate him.

At the conclusion of all the evidence in the case
defendant offered an instruction in the nature of a
demurrer to the evidence, and requested the court to
give the same. This the court refused to do, proper
exception was taken and saved, and this point is the
contention which learned counsel have most strenu-
ously urged upon us. Other alleged errors are said
to have occurred upon the trial. These, together with
such other facts as may be necessary to be stated in
order that a full understanding of the contentions made
and the points ruled may be obtained, will be set out
in the opinion, if such setting forth shall become nec-
essary.

I. At the close of the case, when all of the testi-
mony was in on both sides, defendant offered an in-
struction in the nature of a demurrer to the evidence.
This instruction the court refused to give, which re-
fusal, as we have stated, is the basis of defendant's
most strenuous contention here, and
presents a serious question in the case.
Assuredly there is evidence enough of
facts in the record, for the testimony
of the prosecutrix furnishes that, but is there enough
of corroboration of prosecutrix's testimony? Let us
look fairly over the facts shown in evidence.

Seduction:
Sufficient
Corroboration.

Prosecutrix says that defendant began keeping
company with her in February, 1909, and continued
to do so till a period long subsequent to the date at
which she says she was seduced; that defendant went
to dances with her; that he accompanied her home
from church and drove about the country in a buggy
with her, but that he never came to her father's house
to visit her because her father objected to defendant's
paying attention to her. In this she is not corrobor-
ated by the witnesses for the State, for six of them,

her neighbors and acquaintances for the most part, say they never saw the defendant with her or in her company anywhere. The defendant says he never went with her but twice, once he accompanied her from a dance to the place at which she was staying, and once, at the suggestion of a third person, because of a rainstorm in which prosecutrix was caught, drove with her and another girl in a buggy from the house of a friend to the place where prosecutrix was working. Three other witnesses for the State say that they never saw defendant with prosecutrix but once or twice. During the period embraced in this record defendant is shown to have been paying attention to other girls in the neighborhood and prosecutrix is shown to have been the recipient of much more attention from other young men than from defendant. She avers that the promise of marriage was made to her and accepted by her on some indefinite day in May, 1910. In June following she went to Kansas City, Kansas, and while there and on about the first days of July, 1910, she received from defendant the following letter:

"Rogersville, Mo.

"Miss Susan R.

"Dear Sweetheart. I will try to ancer your letter this afternoon I was to here from you well sweetheart how ar yo by this, find and dandie I guess—well sweetheart I wish I was out thar with you, we wod have a time dont forgit it we wod. Say sweetheart cood I get any work to do thar—say sweetheart do you want me to come out thar say sweetheart do you want mary if you let me no—well sweetheart I will ring off for this time—answer soon ancer soon from your sweethart Benie Bruton to dear sweetheart Susie.

"By By By."

This letter prosecutrix says she answered and in her answer accepted the offer of defendant to marry her. We concede, that, if she had not already, unequivocally and all through her testimony, unalterably

fixed the promise of marriage as in May preceding, we would need to look for corroboration no farther than this letter, although she says defendant gave her no ring, made her no presents and never fixed any day for the wedding. Prosecutrix made no preparations for marriage to defendant, and did not for more than a year (and long after she became pregnant) tell anyone of the alleged promise of defendant. In fact, while the record shows that she told her brother's wife of her pregnancy in May, 1911, there is no evidence in the record that she complained of having yielded to him under a promise of marriage till she filed a sworn complaint against defendant in July, 1911, which complaint is the foundation of this prosecution.

Besides the letter which we set out above, four other letters were written to prosecutrix by the defendant. No one of these, though all were written long subsequent to the alleged promise of marriage, gives any sign or hint of the existence of a promise of marriage. Since these letters contain all and the only extrajudicial utterances of defendant touching the subject-matter of this charge, we append below, as an example of all, one of these four epistles, which one was written in the fall or winter of 1910, following the alleged engagement in the month of May, and the debauchment in August, 1910, preceding. This letter is as follows:

"Miss Susie R    hellow kid how ar yo I am fine and hope you the same   Well kid I will com over sady night if you will go.  Be wred to go when I get thar. I will tell the wrest I see yo so good By By.

"Fron Ben B to susie.

"If you cant go let me no."

As illustrating the slender thread of fact upon which the case hangs and turns, an excerpt from prosecutrix's testimony detailing still other promises of

State v. Bruton.

marriage is pertinent. Upon her cross-examination, among other things, she said:

"Q. What did he say, if you got into trouble he would marry you; the defendant here Ben Bruton, did he say anything about if you got in trouble he would marry you? A. Yes, sir.

"Q. What did he say? A. He said if I got in any trouble he would marry me.

"Q. Was that before he had intercourse with you? A. Yes, sir.

"Q. How did he say that? A. I told you he said he would marry me if he got me into trouble.

"Q. That was before you had intercourse? A. No, sir.

"Q. Did he say if you got into trouble he would marry you? A. Yes, sir.

"Q. How many times did he say that? A. I don't know.

"Q. More than that? A. I never kept count.

. . .

"Q. Was it at Martin's he said he would marry you if you got in trouble, or at Bruton's, or your father's, or Ben Field's? A. Every place I was staying at.

"Q. Every one of them from start to finish? A. Yes, sir."

Since by statute the testimony of the prosecutrix in a prosecution for seduction must be corroborated as to the promise of marriage (Sec. 5235, R. S. 1909), we are constrained to say that we cannot gather from this record sufficient corroboration to warrant our permitting this verdict to stand, when we regard the statute and the adjudicated cases. [State v. Teeter, 239 Mo. 475; State v. Long, 238 Mo. 383; State v. McCaskey, 104 Mo. 644; State v. Eisenhour, 132 Mo. 140; State v. Hill, 91 Mo. 423; State v. Reeves, 97 Mo. l. c. 673; State v. Primm, 98 Mo. 368; State v.

Davis, 141 Mo. 522; State v. Marshall, 137 Mo. 463; State v. Sublett, 191 Mo. l. c. 172.]

For the *quantum* of corroborative evidence, the statute (Section 5235, supra) refers us to the rule prevailing in a prosecution for perjury. The rule as to the sufficiency and weight of corroborative proof in a prosecution for the latter offense was discussed in the case of State v. Heed, 57 Mo. 252, where it was said:

"The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness."

In the case of State v. Eisenhour, supra, l. c. 147, it was said:

"Positive corroborating evidence is not required either in perjury or in a case of seduction under promise of marriage, but any material circumstance shown by other witnesses corroborative of the evidence of the prosecuting witness as to the perjury or promise of marriage is sufficient."

We have searched this record most painstakingly for some sufficient corroboration of the prosecutrix's testimony as to the promise of marriage and can find none of sufficient weight for this purpose. The letter which prosecutrix received in July, in which defendant asked her if she wanted to marry and if so to let him know, if it means anything means a present offer of marriage. It does not corroborate a then long existing contract to marry. If prosecutrix had laid the promise of marriage as of the same date, or subsequent to the receipt of this letter, we would not then hesitate to say that the letter would then furnish strong and ample corroboration of a subsisting contract to marry at the date of the debauchment and seduction. We cannot see why, if such a contract had

existed since May, 1910, defendant should ask prose-cutrix in July, 1910, if she wanted to marry. It is true that she avers that she also accepted this offer, but in a case such as this the more promises and acceptances the less definiteness and certainty of guilt. Too many promises create suspicion, other facts being regarded. She is not able to even approximate the date in May at which the defendant proposed to her and she accepted him, though she testified herein but a little more than two years after she avers she became engaged to marry defendant and there had transpired in the interim matters of pith and moment which it seems ought to have impressed the date upon her memory indelibly.

If it be said that by the letter we set out the defendant merely intended to ask whether prosecutrix was ready to marry and desired her "to set the day" under a then existing promise, the answer would seem to be that prosecutrix herself while professing to know all the antecedent facts, did not so interpret the letter, for she says she did not know why defendant thus wrote to her and that she (regarding evidently the offer as a fresh offer) accepted this offer also, as another offer of marriage. Learned counsel for the State join us in this view and construe the clause in the letter as another offer of marriage, as witness this excerpt from their brief:

"The only proposals of marriage by the defendant are the one made in May, 1910, when coming from Rogersville, and the one contained in the above letter mailed in July, 1910."

If we may judge by the lightness of the punishment inflicted, the jury must have been influenced by the many contradictions and improbabilities disclosed by this record. The whole record is barren of any fact whatever, the letter above alone excepted, which lends any, the least color of corroboration even, to the testimony of the prosecuting witness, and we are not

disposed alone upon the weight of so ambiguous an extrajudicial confession to let this verdict stand, and so we hold that the court should have given the instruction in the nature of a demurrer to the evidence, offered by the defendant.

II. It may be that other testimony, sufficient in law to furnish forth the *quantum* of corroboration required, may be obtained upon another trial. In this contingency, it may be well to say that we find no error in the fact that the court gave instruction 8 touching an *alibi*. The defendant urges upon us that this was error because there was no proof that defendant was not present on August 3, 1910, when prosecutrix was seduced and debauched; that he did not in his testimony deny that he was with her on that date.

Instruction:
Alibi:
No Evidence.

Learned counsel in sticking to the letter of the testimony, have suffered the fate denounced by the maxim *qui haeret in litera haeret in cortice.* Prosecutrix says she was seduced and debauched August 3, 1910, while taking a buggy ride with defendant and ostensibly on the road to church; defendant says he never was with her in a buggy alone; that he never took her buggy riding, except one trip in April, 1911, when he drove her home on account of a rainstorm, and then they were accompanied by the Hargus girl; that he was in her company as an escort twice only in life, once *in December, 1910,* when he went with her to a dance at Horton's, and again *in April, 1911,* on the occasion above set out. His testimony fairly considered embraces an emphatic denial of his presence with prosecutrix on August 3, 1910, and makes for defendant a strong *alibi;* so strong by large inference that we cannot say the learned trial judge erred in caution in giving the instruction objected to, and so we disallow the point.

III.  While certain instructions offered by defendant were refused by the court, we see no error in this for the reason that the court had already fully covered the points toward which the refused instructions were directed, by giving full and correct instructions *sua sponte*, or by giving other instructions asked by and given for defendant.  [State v. Hicks, 178 Mo. 433; State v. Laughlin, 180 Mo. 342.]

*Refusing Instructions.*

IV.  Further complaint is made that it was error to allow the introduction of *the copy of the family record*, which copy was averred to have been taken from this record some fifteen years before the trial.  We do not think this was error; *a fortiori* under the facts here.  No contradiction on defendant's part as to prosecutrix's age was made.  She testified to her age; her father did likewise, and as cumulative proof of the fact of her age, which was not denied, a copy of the family record, originally set down in the family Bible, was offered.  Concededly the record in the family Bible was the best evidence, other things being equal and present; but may not a copy of the entries from a family Bible death and birth register also become competent upon a proper foundation laid?  We think so, and we think the foundation was laid in this case.  The proof showed that the entries were originally made in the Bible by the deceased mother of prosecutrix; that some twelve or fifteen years before, this Bible, having lost its covers and some of its leaves, became so worn and illegible as to the pages thereof containing the register of births, that it was deemed wise, these dozen years *ante litem motam*, to copy the entries from the register upon another sheet of paper; that this copy was made at the request of and in the presence of the deceased mother, the original maker of the entries,

*Copy of Bible Record.*

and in the presence of the witness Frank Reynolds, by another brother of prosecutrix and of said witness; that this copy, being the same offered in evidence in the case and to which objection was lodged, was a correct one, and that the original Bible entries were at the time of the trial so worn as to be illegible. We hold that it was not error to offer the copy under the foundation laid and above stated. Besides as the facts here are, it was proof that was not under the law and facts here hurtful; because it was merely cumulative evidence of a necessary but uncontradicted fact already abundantly shown by other competent proof. It follows that we must disallow this point to defendant.

The further contention that defendant should have been permitted to show that he was, during the time embraced within this record, keeping company with other girls in the community, and that error meet for reversal may be predicated upon the court's refusal to allow such proof, or rather upon the action of the court in limiting this proof, as he did, to dates at which prosecutrix testified defendant was in her company, needs, we take it, but scant attention. The very statement of the proposition shows its fallacy. It is confounded *in limine* and in the utterance by the homely expression of having "two strings to one's bow." Would it not have been entirely feasible and practicable to defendant to have paid strenuous, devoted and continuous court to many maidens of the vicinage, on Sundays, Mondays, Tuesdays and Wednesdays, and at the same time have found ample leisure and opportunity to visit and woo and promise and seduce the prosecutrix on Thursdays and Saturdays? We think so, and think the trial court was correct in setting the limitations of the proof offered as he did, and beyond the bounds of which he did not permit defendant to go.

It follows that this case must be reversed and remanded for a new trial if so be it that the State may by diligence strengthen its case in the behalf mentioned. It is so ordered. *Brown, P. J.,* and *Walker, J.,* concur.