## THE STATE v. ALLEN STEMMONS, Appellant.

### Division Two, July 30, 1918.

1. **SEDUCTION: Corroboration.** While it is not necessary, in a prosecution for seduction, that there shall be two witnesses to sustain the charge, nor need the corroborative evidence be tantamount to another witness, it must be sufficient to counterbalance the testimony of the accused and thus remove the legal presumption of his innocence.

2. ———: ———: **Promise of Marriage.** In a prosecution for seduction corroborative testimony is required only as to the promise of marriage, and may consist of circumstances, but must come from others than the prosecutrix. It may consist of evidence of such conduct on the part of the parties as usually accompanies a promise of marriage, or admissions of the defendant, or continued attentions by him to prosecutrix, covering a long time, including frequent visits, during which she kept no other company, and proof of preparations for marriage made by prosecutrix following a continuous courtship is competent.

3. ———: **Promise of Marriage: When Made.** In a prosecution for seduction it is not necessary that the promise of marriage be made immediately preceding the intercourse; all that is necessary to show is that if made then or previously defendant thereby accomplished prosecutrix's seduction.

4. ———: **Proof That Prosecutrix Was Unmarried.** It is essential in a seduction case that it be made to appear by evidence that prosecutrix was unmarried; but such status may be shown by facts and circumstances. So where prosecutrix testified that she had never had sexual intercourse with any one except defendant, that he told her that if she got into trouble on account of her relations with him he would marry her at once, she bore her parent's name, was questioned throughout the trial as "Miss," was referred to as "this girl," and the details of her manner and place of living and of her associations with defendant indicated an unmarried status, the evidence was sufficient to support a finding that she was unmarried, although there was no affirmative statement by any witness that she was unmarried.

State v. Stemmons.

5. ———: Barter for Promise. The forceful facts of this case, showing the bringing into play by defendant of the arts and blandishments of the seducer, leave nothing on which to base a contention) that, instead of being seduced within the meaning of the statute, prosecutrix bartered away her virtue in exchange for a promise of marriage.

6. ———: Instruction: Argumentative: Comment on Evidence: Attributing Pregnancy to Betrayal. An instruction which is argumentative in form, and an improper comment on the testimony of prosecutrix, should be refused; and an instruction in a seduction case, which tells the jury that they should "scrutinize the testimony of the prosecutrix very closely, for the law assumes that a woman, finding herself pregnant, has the most potent motives to assert her condition was brought about by a promise of marriage, for very obvious reasons: she must excuse the act to her family, to her friends and to society, and every consideration would impel her to attribute it to deception and betrayal," is such an instruction.

7. ———: ———: Corroboration of Promise: Preparations for Marriage. There being positive testimony by others than prosecutrix that after the promise she had made preparations for marriage, and defendant having made no effort to show that they were not made nor to question their good faith, the trial court did not err in giving an instruction authorizing the jury to consider the preparations she had made for housekeeping as one of the corroborating circumstances of the promise of marriage, "although it has not been shown that defendant had knowledge of such preparations."

Appeal from Jasper Circuit Court.—*Hon. R. A. Pearson,* Judge.

AFFIRMED.

*J. D. Harris* for appellant.

(1) The testimony of the prosecutrix ought always, in this class, of cases, to be closely scrutinized; for finding herself pregnant she has the most potent motives to assert that her condition was brought about by promise of marriage. State v. Eckler, 106 Mo. 593. (2) If the illicit intercourse was permitted, by the prosecuting witness, as a mere barter and trade for the promise of marriage, then it is not seduction under

275 Mo.—35

the provision of the statute. The evidence developed on the trial is not sufficient in this case to support the verdict. The testimony of the prosecutrix shows that the illicit intercourse was permitted by her as a mere barter and trade for the promise of marriage. In order to constitute this offense there must be the exercise of certain influences upon the affections of the female by reason of the promise of marriage, and there must be to some extent the bringing into play of certain arts and blandishments directed to her, reasonably sufficient, aided by the promise of marriage, to have her yield to his desires. These things cannot occur where the prosecutrix stands off and at arms-length barters the illicit intercourse for the promise. State v. Mitchell, 229 Mo. 698, 676; State v. Reeves, 97 Mo. 677. (3) The burden rests upon the State to prove, as an essential element of the crime charged, that the prosecutrix was an unmarried woman. There is a total failure of proof on this subject. State v. Wheeler, 108 Mo. 664. (4) There is no sufficient evidence to corroborate the prosecutrix, as to the promise of marriage, to sustain a conviction. That such corroboration is essential is settled by the statute and by the decisions. R. S. 1909, sec. 5235; State v. McCaskey, 104 Mo. 644. The act and conduct of the defendant, as detailed by the prosecutrix, instead of tending to corroborate her on her claim that there was a promise of marriage is all the other way. If he had promised to marry her, way did she not confront him with that promise before her own people and his people at the time she found herself in an unfortunate condition? Why did she wait until after the child was born before undertaking to bring him to account on such alleged promise? Her own tardiness in making the charge against the defendant and on the very eve of his marriage to another young woman taints her whole contention as to the pretended promise of marriage with suspicion. State v. Reeves, 97 Mo. 677. (5) Instruction number three given on behalf of the State is erroneous. The vice of this instruction consists in a comment on the evidence; an assumption

that certain facts were true that were, in fact, contro-
verted; and in reference to acts of the prosecutrix, out
of the presence and without the knowledge of the de-
fendant, as being sufficient to corroborate her on the
promise of marriage.   (6)   The rule that a promise of
marriage or its repetition must be made at the time of
the illicit relation was established in the case of Wilson ‾
v. State, 58 Ga. 328, and in the case of Espy v. Jones,
1 Ala. 454.   The Wilson case is quoted with approval
by this court in State v. Thornton, 108 Mo. 1. c. 653,
and it is submitted that this is the true rule of decision.
State v. Eckler, 106 Mo. 592.   Granting there was a
previous promise of marriage made two or three months
before the illicit intercourse, the solicitation and pro-
curement of illicit intercourse could hardly reasonably
be referred back to that promise of marriage, unless
the promise of marriage was renewed or again made.

*Frank W. McAllister*, Attorney General, and *George
V. Berry*, Special Assistant Attorney-General, for re-
spondent.

(1) Instruction D asked by defendant was properly
refused as an unwarranted comment on the evidence.
State v. Lewis, 264 Mo. 432; State v. Sublette, 191 Mo.
173; State v. Mitchell, 229 Mo. 697; State v. Grugin,
147 Mo. 56; State v. Kimmell, 156 Mo. App. 468; State
v. Chinn, 153 Mo. App. 613.   (2) There was no evidence
of any barter or trade at the time of seduction.   State
v. Walker, 232 Mo. 264; State v. Reed, 237 Mo. 226;
State v. Mitchell, 229 Mo. 698; State v. Phillips, 185
Mo. 188; State v. Eckler, 106 Mo. 587.   (3) The State
proved every essential element in the case.   State v.
Fisher, 162 Mo. 171; State v. Reed, 153 Mo. 453; State
v. Marshall, 137 Mo. 466; State v. Thornton, 108 Mo.
554; State v. Waterman, 75 Kan. 257; State v. Heather-
ton, 60 Iowa, 177; Lewis v. People, 37 Mich. 520.   (4)
There was ample evidence in corroboration of the prose-
cutrix as to the marital engagement.   State v. Eisenhour,
132 Mo. 147; State v. Davis, 141 Mo. 525; State v.
Wheeler, 108 Mo. 665; State v. Hill, 91 Mo. 425; State

v. Fischer, 124 Mo. 463; State v. Dent, 170 Mo. 406.
(5) Instruction Number 3 correctly declared the law
and was fair to defendant. State v. Walker, 232 Mo.
264; State v. Fogg, 206 Mo. 709; Underhill on Criminal
Evidence, sec. 388, p. 666; Rice on Crim. Evidence,
p. 878; 35 Cyc. 1364.

WALKER, P. J.—An information was filed in the
circuit court of Jasper County, charging defendant
with seduction under promise of marriage. Upon a
trial, he was convicted and sentenced to two years im-
prisonment in the penitentiary. From this judgment
he appeals.

Soon after defendant became acquainted with the
prosecutrix, in December, 1914, he became very attentive
to her and so continued until August, 1915, when he
proposed marriage, and she accepted. Moved by his
promise, she prepared table linen, sheets, pillow cases,
and other articles necessary for household use. He
continued his attentions until October, 1915, and one
day when they were out riding in an automobile, he
insistently solicited sexual intercourse with her, urging
her that, being engaged, they were married in the sight
of God, and that a marriage ceremony was merely a
formality, and would make no difference in their rela-
tions. She demurred, saying that they were not married
in the sight of man. He persisted in his solicitations,
declaring if she cared for him, she would consent; that
no one would ever know of it. Relying, as she says,
upon his promise to marry her, like Donna Julia, "a
little still she strove, and much repented, and whis-
perring that she'd ne'er consent, consented." Again
in November, 1915, moved by like blandishments, protes-
tations, and promises on his part, she lent herself to his
embraces. As a consequence of this intercourse, she
became pregnant and gave birth to a child in July, 1916.

Good news is received gladly, but reluctant credence
is given to evil tidings. When, therefore the prosecu-
trix told the defendant of her condition, he refused to
believe her. Finally convinced, he procured some

medicine for her relief, and gave it to her. Its effect was futile. He then consulted a physician who refused to perform an abortion on the prosecutrix. Defendant then told the prosecutrix he would take her to some place where she could have attention. It was arranged that she was to write to her parents that she was coming home, being then at her grandmother's in Jasper County, and her parents residing in Kansas. But, instead of going home, she was to go to Kansas City, where he would meet her. In compliance with this agreement, she went to Kansas City, where he met her at the railroad station, took her to a maternity hospital, and made arrangements for her stay there until after her confinement, paying the manager $100 to defray her expenses, and subsequently an additional $100 for a like purpose. He went away and did not return until several days later. Her parents, in the meantime, had learned of her condition and whereabouts, and by agreement defendant met them at the hospital. He reached there before they did. Upon his arrival, he informed the prosecutrix that her parents knew of her condition, and were coming to see her. He requested her to tell them that she did not want to marry the defendant until after the baby was born; that immediately after its birth, it could be put in a home and she could get it later, and that she must make a favorable report of his relations with and conduct towards her. When the parents arrived, they found the defendant there in conversation with the prosecutrix. In response to an inquiry made by the mother, defendant stated that he knew no one else than himself had engaged in sexual intercourse with the prosecutrix. Asked further by the mother if he would marry the prosecutrix, he replied: "I didn't say I wouldn't."

Defendant testifying in his own behalf, denied all of the facts of an inculpatory nature in the foregoing statement. He admits that he arranged for the prosecutrix's stay at the maternity hospital, and that he paid her expenses while there; but says he did this through fear of blackmail; that he had never shown the prosecu-

trix any attention as a lover, and had seldom ever been in her company; that he had never had sexual intercourse with her; that his acquaintance with her was but casual; that she came to a drug store in the neighborhood, where he was employed, told him she was pregnant, and asked him to give her something to produce an abortion; that he refused to do so; that she persisted in her request, and finally said, if he did not provide a means for her relief, she would charge that he was the cause of her trouble; that, impelled by fear of her so doing, he went to a physician and solicited his aid in the matter; that the latter refused to become a party to the proposed crime; and as a last alternative, in an effort to remove from his horizon this impending cloud, he took her to Kansas City, placed her in a maternity hospital and advanced the money for the attention she was to receive while there.

The record is burdened with other testimony pro and con, much of it entirely irrelevant, to impeach this or that witness, or to show by facts and circumstances, often remote in their connection with the main issue, the relations existing between the principals in this miserable drama. We have set out enough of the testimony to define its general character. What we are concerned in is the proof as to the promise here alleged to have been made, as affecting the commission of the crime charged, and the other errors assigned, as we may be able to glean them from the argument submitted by counsel for defendant under the misleading title, as here employed, of Points and Authorities.

I. It is contended that the testimony of the prosecutrix as to the promise of marriage was not sufficiently corroborated, and as a consequence, that the crime charged was not made out as required by Section 5235, Revised Statutes 1909. Contentions of like nature have been made in the all-too-numerous cases arising under the statute (Sec. 4478) denouncing the offense here charged. As a consequence, almost every phase of objection to proof of this nature

Corroboration.

has been under consideration. The letter of the statute (Sec. 5235), defining the measure of corroboration, is, that it shall be to the same extent as that required of the principal witness in perjury. The reason underlying this statute is that in prosecutions for seduction, as in those for perjury, in the absence of corroboration, it would simply be the oath of the complaining witness against that of the accused, or an oath against an oath, resulting in a counterpoise of testimony, and leaving it doubtful as to where the truth lies. While it is not necessary, in a prosecution for perjury, that there shall be two witnesses to sustain the charge as under the old rule, nor need the corroborative testimony be tantamount to another witness, it must be sufficient to counterbalance the testimony of the accused and thus remove the legal presumption of his innocence. [State v. Richardson, 248 Mo. 563, 153 S. W. 727; State v. Hunter, 181 Mo. 316, 80 S. W. 955; State v. Faulkner, 175 Mo. 546, 75 S. W. 116; State v. Heed, 57 Mo. 252.] Likewise, in prosecutions for seduction, as in the instant case. While the corroborative testimony, required only as to the promise, may consist of circumstances, they must come from other than the prosecutrix. [State v. Long, 257 Mo. 1. c. 208.] While it need not be such as standing alone would justify a conviction in a case requiring only the testimony of one witness, it must be at least strongly corroborative of the testimony of the prosecutrix. [State v. Bruton, 253 Mo. 1. c. 370.] It is not necessary that such supporting proof shall be the testimony of a witness who heard the promise of marriage, but evidence of the conduct of the parties such as usually accompanies a promise of this character will suffice. [State v. Teeter, 239 Mo. 1. c. 487.] Admissions of the defendant, as to the promise, are sufficient. [State v. Long, 238 Mo. 383; State v. Sublett, 191 Mo. 1. c. 172.] Continued attentions by defendant to the prosecutrix covering a long period, consisting of frequent visits during which she kept no other company, will sufficiently support her testimony that her ruin was consummat-

ed under a promise of marriage. [State v. Eisenhour, 132 Mo. 140; State v. Brassfield, 81 Mo. l. c. 159.] In short, evidence of material circumstances which usually accompany a marriage engagement, proved by other witnesses, will satisfy the statute. As to what these particular circumstances may be, each case must, to a great extent, be its own guide. [State v. Davis, 141 Mo. l. c. 525; State v. Wheeler, 108 Mo. 658; State v. Hill, 91 Mo. 423.] Proof of preparations made for the marriage by prosecutrix following a continuous court-ship, may properly be introduced to corroborate the promise. [State v. Walker, 232 Mo. l. c. 265; State v. Fogg, 206 Mo. 696.] It is not necessary that the promise be made immediately preceding the intercourse; all that is necessary to show is that if made then or previously, defendant thereby accomplished the prosecutrix's se-duction. [State v. Brassfield, 81 Mo. l. c. 160.] Guided by these illustrative precedents, are the facts at bar sufficient to bring this case within the requirements of the statute? For a period extending over several months, animated no doubt by that old maxim that " 'tis man's province to sue, but woman's to consent," he was un-remitting in his attentions to the prosecutrix. During this time he twice promised to marry her. Resting with confidence in the sincerity of his purpose to com-ply with this promise, she accepted no other suitors; and in hopeful anticipation of her marriage with him she prepared, with her own hands, such articles of house-hold use as the needle of the efficient and industrious woman can fashion. These circumstances disclosed by other than her own testimony, attest the good faith of her reliance on his promise, give corroborative sup-port to her testimony, and cast no uncertain shadow upon the truth of defendant's statements on the witness stand. We overrule this contention.

II. It is urged that proof is lacking to show that the prosecutrix was an unmarried female. We said in State v. Wheeler, 108 Mo. l. c. 664, that it was just as

Unmarried:
Proof.
essential that it appear by evidence that the prosecutrix was unmarried, as that she was of good repute, and that such status will not be presumed in the absence of any evidence whatever on that point. In State v. Reed, 153 Mo. l. c. 453, reference is made to the rule as announced in this regard in the Wheeler case, the court observing in discussing the *quantum* of evidence necessary to sustain a conviction, that it was not absolutely necessary that the fact, that the prosecutrix was at the time of her seduction an unmarried female, be shown by direct and positive testimony; but that it is sufficient if it be shown, like any other material matter necessary to a conviction, by facts and circumstances. In the Reed case, there was no direct and positive testimony that the female was unmarried, but it was held that the record disclosed such facts and circumstances as to warrant the jury in so concluding. This holding was approved in State v. Pipkin, 221 Mo. l. c. 460. Although this case was lacking in direct evidence of the unmarried condition of the prosecutrix, this court held that her testimony that she had never had intercourse with any one except the defendant was a strong circumstance tending to show her unmarried condition. As further circumstances tending to prove this condition, it was shown that her father's name was Bailey, and that she was addressed throughout the trial as Miss Bailey, and in other terms, indicating that she was single. In State v. Sutton, 232 Mo. l. c. 249, testimony similar in all its material features to that introduced in the Pipkin case, was held sufficient to prove the single status of the prosecutrix, within the meaning of the statute.

In the case at bar, the prosecutrix testified that she had never had sexual intercourse with any one except the defendant; that he told her if she got into trouble on account of her relations with him, they would marry at once. She bore her parents' name, and was questioned during the trial as "Miss" or as "this girl," or

"that girl," dependent upon the recognition by the examiner of those conventionalities which, while minor, are always characteristic of good breeding. The place and manner of her living, as well as the character of her association with the defendant during all of their acquaintance, is strongly indicative, as are the other circumstances stated, of her unmarried condition. This contention hangs upon the single thread of the lack of an affirmative statement by some. witness that the prosecutrix was unmarried. The facts and circumstances tending to show this condition are as convincing in their nature and have as much probative force as those adduced for a like purpose and held sufficient in the cases cited. There was not an intimation to the contrary during the trial. The Supreme Court of Iowa says, in a seduction case, in discussing the *quantum* of evidence necessary to sustain a conviction, that "a cause cannot be reversed on the ground that there was no direct evidence of a material matter, which was throughout the trial assumed to be true." [Egan v. Murray, 80 Iowa, 180.] Putting aside the literal wording of this ruling and construing it to mean that a case "should not be reversed" under the conditions stated, it announces a wholesome doctrine. One, the observance of which, tends to the brushing aside of attentuated contentions and the decision of cases upon substantial facts. In the presence of the facts and circumstances here, sufficiently cogent in our opinion, to satisfy the impartial mind that the prosecutrix, not only at the time of her seduction, but at that of the trial, was an unmarried woman, it is not necessary to invoke the rule thus announced. We hold the contention without merit.

III.   The forceful facts in this case, showing the circumstances under which the defendant overcame the prosecutrix, leave nothing on which to base the contention that instead of being seduced within the meaning of the statute, she bartered away her virtue.
**Barter of Virtue.** The Reeves case (97 Mo. l. c. 676), relied on to sustain this contention, presented an altogether

different state of facts from those at bar. There, the conditions were, as rather strongly put by the author of the opinion, in the face of the actual facts, "a blunt consent to intercourse in exchange for a promise of marriage." This interpretation of the evidence, while ostensibly directed at the force of the testimony, was, in fact, employed in the discussion of the sufficiency of an instruction, which omitted a prime essential to conviction, viz., that the jury find that the prosecutrix had been "seduced." No such question is here involved, the instructions being immune from error in this regard. The other case to which our attention has been called as an authority to support the contention here made, is that of State v. Mitchell, 229 Mo. l. c. 698. The judgment of conviction for seduction was in that case affirmed. The only manner in which the question of the sufficiency of the evidence as to seduction was even referred to was an incidental statement that illicit intercourse permitted by a prosecutrix, as a barter and trade for a promise of marriage, was not seduction, as defined by the statute (Sec. 4478); that arts and blandishments must be brought to the aid of the promise to influence the prosecutrix in yielding to the seducer's desire. The testimony here discloses the bringing into play by defendant of such arts of the seducer as the cases say will constitute seduction. This is enough to bring the case within the purview of the law.

IV. The refusal of Instruction D., asked by defendant, is assigned as error. It is as follows: "The court **Instruction.** instructs the jury that in passing upon the evidence and in determing its weight and credibility, it is your duty to scrutinize the testimony of the prosecutrix very closely. For the law assumes that a woman, finding herself pregnant, has the most potent motives to assert that her condition was brought about by a promise of marriage, for very obvious reasons: she must excuse the act to her family, to her friends and to society, and every consideration would impel her to attribute it to deception and betrayal; and

the jury should, therefore, pass upon the weight and credibility of her testimony with these considerations in view.'' This instruction is argumentative in form, and an improper comment on the testimony of the prosecutrix. It is elementary that an instruction is erroneous which singles out and comments upon any part of the testimony. In the Sublett Case, 191 Mo. l. c. 173, we held that the defendant was not entitled to an instruction which told the jury that the testimony of the prosecutrix must be strongly corroborated by clear proof; and in the Grugin Case, 147 Mo. l. c. 56, it was held sufficient ground for a reversal that an instruction singled out a particular fact for the consideration of the jury. Instruction D. was, therefore, properly refused.

Instruction numbered 3, given at the request of the State, in regard to the evidence necessary to corroborate the prosecutrix as to the promise of marriage, is assigned as error, on the grounds that it is a comment on the evidence, and an assumption of facts not proven, in that the testimony as to her preparations for marriage were not known to defendant, and, consequently, the jury should not have been instructed that such acts might be taken into consideration, as tending to prove a promise. These preparations were established by other than the prosecutrix's testimony. While it is not necessary that they should have been corrobrated, as is required of proof of the promise, they are supported by many attending circumstances which attest their truth. Among these may be mentioned the unsullied reputation, or as the books put it, the ''good repute'' of the prosecutrix; the long term of the parties' social intimacy; his confidence; her fidelity never questioned until the trial; his effort, when he ascertained her condition, to relieve her from the odium of child birth while out of the protecting aegis of wedlock; his payment of her expenses at the maternity hospital; and his statements to her mother in the presence of her father, when asked if he would marry her, that he ''had not said he would not.'' This last fact he denies, but the

jury believed their testimony. Present all of these facts, the trial court gave the instruction, authorizing the jury to consider the preparations she was shown to have made for housekeeping, as one of the corroborating circumstances, although it had not been shown that he knew of such preparations. No effort was made by defendant to show that the preparations were not made, nor was their good faith attempted to be questioned. Confronted with all of the supporting circumstances adverted to, it cannot be reasonably concluded that they were intended for other than her contemplated marriage with defendant. The instruction was, therefore, not erroneous. Instructions identical in form so far as the matter here under review is concerned, were approved in State v. Walker, 232 Mo. l. c. 265, and State v. Fogg, 206 Mo. 696.

The instructions, upon the whole, fully and fairly presented the law in this case under the evidence.

The defendant was awarded a fair trial and the judgment should be affirmed. It is so ordered. All concur.